## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HEATHER MARIE STEWART, | : | |
| Plaintiff | : | CIVIL ACTION NO. 4:11-CV-00978 |
| vs. | : | (Complaint Filed 5/20/2011) |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | : | (Judge Caputo) |
| Defendant | : | |

## MEMORANDUM

**BACKGROUND**

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Heather Marie Stewart's claim for social security disability insurance benefits.

On June 9, 2008, Stewart filed protectively[1] an application for disability insurance benefits. Tr. 133-140 and 172.[2] The application was initially denied by the Bureau of Disability Determination[3] on January 7, 2009. Tr. 93-97. On February 6, 2009,

---

[1] Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

[2] References to "Tr.\_" are to pages of the administrative record consisting of two parts, the first filed by the Defendant as part of his Answer on September 13 and the second on November 28, 2011 (Docs. 10 and 14). The administrative record in this case consists of 840 pages. We thoroughly reviewed the entire record. That review was time-consuming and extremely wasteful because the record contained numerous duplicate copies of Stewart's medical records.

[3] The Bureau of Disability Determination is a state agency which initially evaluates applications for disability insurance benefits on behalf of the Social Security Administration.

Stewart requested a hearing before an administrative law judge. Tr. 12 and 98. After 11 months had elapsed, a hearing was held on January 6, 2010. Tr. 26-90. On March 18, 2010, the administrative law judge issued a decision denying Stewart's application. Tr. 12-21. On April 12, 2010, Stewart filed a request for review with the Appeals Council and on March 25, 2011, the Appeals Council concluded that there was no basis upon which to grant Stewart's request. Tr. 1-8.

Stewart then filed a complaint in this court on May 20, 2011. Supporting and opposing briefs were submitted and the appeal[4] became ripe for disposition on January 25, 2012, when Stewart filed a reply brief.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that Stewart met the insured status requirements of the Social Security Act through December 31, 2011. Tr. 12, 14 and 145.

Stewart, who was born in the United States on March 8, 1967, graduated from high school in 1986 and can read, write, speak and understand the English language and perform basic mathematical functions.[5] Tr. 34, 133, 145, 156, 162, 186 and 828. During her

---

Tr. 94.

[4] Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D.Pa. Local Rule 83.40.1.

[5] Counsel who represented Stewart at the administrative hearing noted that Stewart had "problems with times sevens." Tr. 34. One psychologist who evaluated Stewart did

elementary and secondary schooling, Stewart attended regular education classes. Tr. 162.

Stewart has past relevant employment[6] as a nursing assistant which was described by a vocational expert as semi-skilled, medium work; a warehouse worker described as unskilled, medium work; a personal attendant described as semi-skilled, light work; and an assembler of small products described as unskilled, light work. Tr. 70.[7]

---

indicate that Stewart was unable to "handle the serial 7's." However, Stewart stated that she could count change and use a checkbook. Tr. 34, 186 and 621.

[6]Past relevant employment in the present case means work performed by Stewart during the 15 years prior to the date her claim for disability was adjudicated by the Commissioner. 20 C.F.R. §§ 404.1560 and 404.1565.

[7]The terms sedentary, light, medium, heavy and very heavy work are defined in the regulations of the Social Security Administration as follows:

> (a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
>
> (b) *Light work*. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

3

Records of the Social Security Administration reveal that Stewart had reported earnings in the years 1986 through 1992 and 1994 through 2006. Tr. 146. Her annual earnings ranged from a low of $699.88 in 1994 to a high of $17,690.47 in 1998. Id. Although Stewart stopped working in August, 2006, she does not claim that she became disabled until May 30, 2007. Tr. 133, 157 and 175; Doc. 18, Plaintiff's Brief, p. 2. Stewart alleges that she is unable to work because of physical and psychiatric problems, including chronic back pain and depression. Id.

---

> (c) *Medium work*. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can do sedentary and light work.
>
> (d) *Heavy work*. Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.
>
> (e) *Very heavy work*. Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. If someone can do very heavy work, we determine that he or she can also do heavy, medium, light and sedentary work.

20 C.F.R. § 404.1567.

For the reasons set forth below, we will remand this case to the Commissioner for further consideration.

**STANDARD OF REVIEW**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner

of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

Another critical requirement is that the Commissioner adequately develop the record. Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000)("The ALJ has an obligation to develop the record in light of the non-adversarial nature of benefits proceedings, regardless of whether the claimant is represented by counsel."); Rutherford v. Barnhart, 399 F.3d 546, 557 (3d Cir. 2005); Fraction v. Bowen, 787 F.2d 451, 454 (8th Cir. 1986); Reed v. Massanari, 270 F.3d 838, 841 (9th Cir. 2001); Smith v. Apfel, 231 F.3d 433. 437 (7th Cir. 2000); see also

Sims v. Apfel, 530 U.S. 103, 120 S.Ct. 2080, 2085 (2000)("It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits[.]"). If the record is not adequately developed, remand for further proceedings is appropriate. Id.

**SEQUENTIAL EVALUATION PROCESS**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating disability insurance claims. See 20 C.F.R. §404.1520; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial

7

gainful activity,[8] (2) has an impairment that is severe or a combination of impairments that is severe,[9] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[10] (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id. As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[11]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and

---

[8] If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further.

[9] The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 404.1520(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 404.1520(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 404.1523 and 404.1545(a)(2).

[10] If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step. 20 C.F.R. § 404.1525 explains that the listing of impairments "describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." Section 404.1525 also explains that if an impairment does not meet or medically equal the criteria of a listing an applicant for benefits may still be found disabled at a later step in the sequential evaluation process.

[11] If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id; 20 C.F.R. § 404.1545; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

**DISCUSSION**

The administrative law judge at step one of the sequential evaluation process found that Stewart has not engaged in substantial gainful activity since May 30, 2007, the alleged disability onset date. Tr. 14.

At step two of the sequential evaluation process, the administrative law judge found that Stewart has the following severe impairments: "mild lumbar degenerative disc disease, history of left knee surgery, uncontrolled hypertension, depression, anxiety disorders and history of alcohol abuse[.]" Id.

At step three of the sequential evaluation process the administrative law judge found that Stewart's impairments did not individually or in combination meet or equal a listed impairment. Tr. 14-15. However, as part of the step three analysis the administrative law judge found that Stewart had moderate difficulties with respect to concentration, persistence and pace. Tr. 19.

At step four of the sequential evaluation process the administrative law judge found that Stewart had "the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except that she is limited to occasional standing and walking.[12] In

---

[12]"Occasional" under rulings of the Social Security Administration is defined as up to 1/3 of an 8-hour workday or approximately 2.67 hours. "Frequently" is defined as up to 2/3

addition the claimant is limited to 1-2 step instructions and jobs involving only occasional contact with coworkers and the public." Tr. 15.

In setting the physical aspect of the residual functional capacity the administrative law judge relied on the opinion (dated December 30, 2008) of Michael J. Brown, D.O., who reviewed Stewart's medical records on behalf of the Bureau of Disability Determination and found that Stewart could perform medium work. Tr. 665-671. However, the administrative law judge rejected the opinion (dated December 9, 2008) of Ronald Vandegriff, D.O., who examined Stewart on behalf of the Bureau of Disability Determination. Tr. 638-647. Dr. Vandegriff found that Stewart was limited to sedentary work. Tr. 642-643. Dr. Vandegriff also found that Stewart could only occasionally bend and never kneel, stoop, crouch, balance or climb. Tr. 643. The administrative law judge in rejecting Dr. Vandegriff's opinion stated as follows: "A November 2008 consultative examination by Dr. Vandegriff was essentially normal except for an elevated blood pressure reading of 128/90. Otherwise, she was able to move about the room without difficulty, had no clubbing, cyanosis or edema in the extremities, and had intact strength, reflexes and sensation. Dr. Vandegriff assessed the claimant with sedentary restrictions, which are out of proportion to the objective findings and treatment history and appear to [be] based on her subjective statements[,]" Tr. 17.

In setting the mental aspect of the residual functional capacity the administrative law judge relied on the opinion (dated December 8, 2008) of Jonathan Rightmyer, Ph.D., a psychologist who reviewed Stewart's medical records on behalf of the Bureau of Disability Determination and found that "[t]he medical evidence establishes

---

of an 8-hour workday or approximately 5.3 hours.

10

medically determinable impairments of Major Depressive Disorder and Anxiety Disorder [not otherwise specified], and Alcohol Dependence, unclear remission" but that Stewart "is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairments." Tr. 650. The administrative law judge, however, rejected the opinion (dated August 27, 2008) of Raymond S. Klein, Ed.D., a psychologist who examined Stewart and found that Stewart had several marked limitations including in her ability to make judgments on simple work-related decisions. Tr. 623. Dr. Klein stated that Stewart "would have problems in a gainful situation." Tr. 621. The administrative law judge in rejecting Dr. Klein's opinion stated as follows: "The opinion of Dr. Klein, the consultative psychologist, is given little weight since it is based on the claimant's subjective statements, which are not found fully credible, rather than objective findings. Further, this opinion is inconsistent with the record as a whole including the limited treatment history and the fact that claimant was still using alcohol[.]" Tr. 19.

The administrative law judge also rejected the opinion of Randy Kaplan, M.D., a psychiatrist, who evaluated Stewart on January 14, 2010, at the request of Stewart's primary care physician, and assessed Stewart with a Global Assessment of Functioning (GAF) score of 45-50.[13] Tr. 826-831. The ALJ stated that he gave "little weight to the GAF

---

[13]The GAF score allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness. *Diagnostic and Statistical Manual of Mental Disorders* 3–32 (4th ed. 1994). A GAF score is set within a particular range if either the symptom severity or the level of functioning falls within that range. Id. The score is useful in planning treatment and predicting outcomes. Id. The GAF rating is the single value that best reflects the individual's overall functioning at the time of examination. The rating, however, has two components: (1) symptom severity and (2) social and occupational functioning. The GAF is within a particular range if either the symptom severity or the social and occupational level of functioning falls within that range. When the individual's symptom severity and

11

scores of 50 or below since they do not provide an assessment of the claimant's work-related abilities or limitations." Tr. 19. The ALJ in rejecting the GAF scores further noted that "[t]he assessment from the state agency psychologist was given greater weight since it is more consistent with the record as a whole." Id.

Based on the above residual functional capacity and the testimony of a vocational expert the administrative law judge found that Stewart could perform her prior relevant work as an assembler of small products. Tr. 19 and 71. In the alternative the ALJ found, based on the testimony of the vocational expert, that Stewart could perform unskilled, light work as an injection molding machine tender and unskilled, light work as a sewing-machine operator, semiautomatic, and that there were a significant number of such jobs in the local, regional and national economies. Tr. 20-21 and 73-74. In questioning the vocational expert, the administrative law judge did not include in the hypothetical a moderate limitation in Stewart's concentration, persistence and pace. Id.

Stewart argues that the administrative law judge erred when he failed to (1) weigh the medical opinions according to the correct legal standard and did not state reasons for the weight she gave the opinions; (2) perform a function-by-function assessment in

---

functioning level are discordant, the GAF rating reflects the worse of the two. Thus, a suicidal patient who is gainfully employed would have a GAF rating below 20. A GAF score of 21-30 represents behavior considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas. A GAF score of 31-40 represents some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. Id. A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational or school functioning. Id. A GAF score of 51 to 60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning. Id. A GAF score of 61 to 70 represents some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well with some meaningful interpersonal relationships. Id.

arriving at Stewart's residual functional capacity as required by rulings of the Social Security Administration; (3) ask the vocational expert a hypothetical question which included moderate difficulties in concentrations, persistence and pace; and (4) follow the correct legal standard in assessing Stewart's credibility. Although we are not persuaded by the first, second and fourth arguments, the third argument has substantial merit. We will only address the third argument because it is the basis for remanding the case to the Commissioner for further proceedings.[14]

The medical records reveal that Stewart was treated for both physical and psychiatric problems, including high blood pressure, back pain, gastrointestinal disorders, depression and anxiety. Stewart in the present appeal contends that her disabling conditions are the chronic back pain and depression.

No treating physician or psychologist has provided a detailed functional assessment indicating that Stewart was disabled mentally or physically for the requisite statutory continuous 12-month period.[15] There is a lack of any clinical, diagnostic or radiological evidence suggesting that Stewart has a severe physical disorder which would prevent her from engaging in full-time employment. However, the errors in this case are not at steps 1 through 3 and part of step 4 of the sequential evaluation process (which include the ALJ treatment of the medical opinions and the formulation of Stewart's residual

---

[14] The fact that we are not persuaded by three of Stewart's arguments does not prevent the Commissioner from revisiting those issues if he finds that to be warranted.

[15] As stated earlier in this memorandum to receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).

functional capacity but at step 4 when the ALJ determined that Stewart can perform her prior relevant work[16] as a assembler of small products and at step five in determining that there were other positions that Stewart could perform.

As stated above, at step three of the sequential evaluation process the administrative law judge found that Stewart had moderate difficulty with concentration, persistence and pace. However, when presenting a hypothetical question to the vocational expert, the administrative law judge did not include a moderate limitation in concentration, persistence and pace.

The Court of Appeals for the Third has held that if an administrative law judge poses a hypothetical question to a vocational expert that fails to reflect all of the applicant's impairments that are supported by the record, the vocational expert's opinion cannot be considered substantial evidence. Ramirez v. Barnhart, 373 F.3d 546, 552-553 (3d Cir. 2004); see also Corona v. Barnhart, 431 F.Supp.2d 506, 516 (E.D.Pa. 2006)("the ALJ's determination that Plaintiff suffers mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration is not properly reflected in her hypothetical question to the VE."); Warfle v. Astrue, Civil No. 10-1255, slip op. at 20 (M.D. Pa. May 5, 2011)(Muir, J.)("It is incumbent on the administrative law judge to include in a hypothetical question all the limitations that are supported by the records."); Little v. Astrue, Civil No. 10-1626, slip op. at 18-19 (M.D.Pa. September 14, 2011)(Kosik, J.)(same). In this case the record establishes that Stewart had

---

[16] At step 4 of the sequential evaluation process several issues are addressed including the credibility of a claimant, the claimant's residual functional capacity and whether or not the claimant can perform prior relevant work.

moderate difficulty with concentration, persistence and pace and the ALJ so found in her decision.

Although the administrative law judge limited Stewart to unskilled work, this does not adequately reflect a limitation in concentration, persistence and pace. Id.[17] There are clearly many unskilled jobs that require an employee to maintain concentration, persistence and pace. There is no evidence in the record from a vocational expert that a moderate limitation in those areas would not impact Stewart's ability to maintain employment as an assembler of small products, as an injection molding machine tender and as a sewing-machine operator, semiautomatic. Those positions appear to be the type requiring a fast or consistent production pace. We can only speculate as to what the erosion in the number of jobs available would have been if a moderate limitation in concentration, persistence and pace would have been included in the hypothetical question.[18]

A review of the transcript of the administrative hearing held on January 6, 2010, reveals another problem with the ALJ's steps 4 and 5 analysis. The vocational expert answered the questions regarding the positions Stewart could perform based on his understanding that Stewart could stand for up 2/3 of an 8-hour workday. Tr. 75.[19] There

---

[17] See also O'Connor-Spinner v. Astrue, __F.3d__, No. 09-4083 (7th Cir. Nov. 29, 2010)("[T]he ability to stick with a given task over a sustained period is not the same as the ability to learn how to do task of a given complexity.").

[18] It is also important to mention that at step five of the sequential evaluation process the burden is on the Commissioner to produce evidence demonstrating that other work exists in significant numbers in the national economy that the applicant can perform. 20 C.F.R. §§ 416.912 and 416.960(c).

[19] At least there is an ambiguity in the questioning. At one point the vocational expert stated as follows: "No, only a part of the day. The sitting – you said standing was permitted up to two-thirds of the day, which is occasional." Tr. 75. This statement by the vocational

is an incongruity between the ALJ's decision and the vocational expert's testimony. The vocational expert identified jobs which require standing for up to 2/3 of an 8-hour workday. However, the ALJ in his decision limited Stewart to only occasional standing and walking (up to 1/3 of an 8-hour workday). Tr. 15. Consequently, the vocational expert's testimony cannot be considered substantial evidence supporting the ALJ's decision.

Our review of the administrative record reveals that the decision of the Commissioner is not supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) vacate the decision of the Commissioner and remand the case for further proceedings.

An appropriate order will be entered.

s/A. Richard Caputo<br>
A. RICHARD CAPUTO<br>
United States District Judge

Dated: December 12, 2012

---

expert can be interpreted to mean that he understood the sitting was occasional, 1/3 of an 8-hour workday, and the standing was on a frequent basis, up to 2/3 of an 8-hour workday.